UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLES LINDEN and RONALD LANDER,

Plaintiffs,

v.

X2 BIOSYSTEMS, INC., *et al.*,

Defendants.

Case No. C17-0966 RSM

ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING LEAVE TO AMEND

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. #55. Defendants seek the dismissal of all of Plaintiffs' claims, on the basis that Plaintiffs have failed to plead they were terminated without just cause, which is the trigger for the compensation they allege they are owed. *Id.* Plaintiffs oppose the motion, arguing that they have adequately pled they were terminated without just cause, and that Defendants cannot support their definition of that term. Dkt. #66. Having reviewed the record before it, and neither party having requested oral argument on the motion, the Court now GRANTS Defendants' motion, subject to leave to amend.

## II. BACKGROUND

This matter raises allegations of breach of contract and willful deprivation of wages in violation of RCW 49.52.050 and RCW 49.52.070. Dkt. #1. Plaintiffs filed their Complaint in this Court on June 27, 2017, and allege the following factual background to their claims:

ORDER
PAGE - 1

4.1  Plaintiffs Linden and Lander are former employees of Defendant X2.

4.2  Plaintiff Linden was employed by Defendant X2 as a consultant from September 3, 2013 until October 31, 2013, and as a salaried employee with the title Strategic Program Manager from November 1, 2013 until March 6, 2017.

4.3  Plaintiff Lander was employed by Defendant X2 as a consultant to Defendant X2 and to its former company, X2 Impact, from November 2012 until October 31, 2013 and as a salaried employee with the title Program Manager for Defendant X2 from November 1, 2013 until March 6, 2017.

4.4  Defendant X2 is a private corporation that develops and distributes impact monitoring devices and software providing neurocognitive baseline testing, post-impact assessments, remove-from-play decision support, and recovery and return-to-play monitoring. See **Exhibit A**.

4.5  During their employment with Defendant X2, Plaintiffs were responsible for identifying and developing relationships and agreements between various government agencies and Defendant X2. Plaintiffs' duties included securing meetings with relevant members of government agencies, preparing bids and proposals for government contracts, and conducting research.

4.6  During their employment with Defendant X2, Plaintiffs met numerous milestones in securing government contracts, preparing bids and proposals for said contracts, and delivering on said contracts.

4.7  In November 2013, Plaintiffs became salaried employees of Defendant X2.

4.8  For the employment period from November 2013 to May 2014, Plaintiffs received reimbursement of their travel and business expenses but did not receive salaries from Defendant X2. During this time, Defendant X2 assured Plaintiffs that they would receive salaries and back pay once Defendant X2 secured funds.

4.9  In January 2014, Plaintiffs and Defendant X2 executed employment contracts and stock agreements memorializing Plaintiffs' employment agreement with Defendant X2. See **Exhibit B**. These agreements memorialized Plaintiffs' positions as members of Defendant X2's Government Industrial Division ("GID"), which was the sole department at Defendant X2 responsible for securing and performing on government contracts.

4.10 In May 2014, Plaintiffs were included on Defendant X2's employee payroll, and Defendant X2 provided funds to Plaintiffs that constituted their salaries, signing bonuses, and back pay from November 2013 to date.

4.11 In March 2015, Defendant X2 requested that Plaintiffs renegotiate their employment contracts for lesser compensation. Plaintiffs did not agree to Defendant X2's request. See **Exhibit C**.

4.12 In October 2015, two members of the GID resigned from Defendant X2 due to payroll disputes, and Plaintiffs subsequently assumed the departed members' duties and responsibilities. Defendant X2 promised to Plaintiffs a salary increase and additional compensation for assuming said duties and responsibilities, which promise did not materialize.

4.13 In August 2016, Defendant X2 requested that Plaintiff Linden sign an agreement stipulating that Plaintiff Linden would become an unpaid board member of Defendant X2. See **Exhibit D**. Defendant X2 abandoned its request before said agreement could be formalized.

4.14 In September 2016, on information and belief, Defendant X2 ceased support for the GID; to wit, in September 2016, a government-funded research grant, which had been awarded to Defendant X2 for a contract Plaintiffs secured, ended, with Defendant X2 failing to meet its milestone deliverables for said contract during the research grant period. Through Plaintiffs' diligent efforts, Plaintiffs secured from the government a no-cost extension to the contract, and thereafter worked on their own to meet the contract milestones. From the time the research grant expired until the contract's completion in March 2017, Defendant X2 failed to provide Plaintiffs with internal support to meet the contract milestones and failed to reimburse Plaintiffs for incurred travel and business expenses.

4.15 On March 6, 2017, Plaintiffs completed the collection of data for a government contract on which they had been performing since January 2014. That same day, then and current CEO Defendant Wu telephoned Plaintiffs individually to inform them that Defendant X2 was terminating their positions due to lack of company funds, and instructed Plaintiffs to cease all work for Defendant X2.

4.16 Defendant X2 currently has several pending government contracts, which Plaintiffs negotiated and secured.

4.17 On April 6, 2017, Plaintiffs jointly sent CEO Wu written correspondence acknowledging their termination and requesting their severance, bonuses, and Phantom Stock compensation, as pursuant to the employment and stock contracts, as well as reimbursement of travel and business expenses incurred during the last few months of their employment. See **Exhibit E**.

4.18 On May 11, 2017, Plaintiffs received written response correspondence from Defendant X2 through its counsel. In its correspondence, Defendant X2 confirmed that Plaintiffs had been terminated due to Defendant X2's lack of funds, and made clear that Defendant X2 would not be issuing Plaintiffs their severance benefits, bonuses, or stock.

4.19 As of the date of this Complaint, Plaintiffs have received no severance, no bonuses, and no stock.

4.20 As of the date of this Complaint, upon information and belief, Defendant X2 continues to operate and do business.

4.21 As of the date of this Complaint, upon information and belief, Defendant Wu, Defendant Flaim, and Defendant Siege continue to receive salaries and/or compensation from Defendant X2.

4.22 Upon information and belief, Defendant X2 has sufficient funds with which to pay Plaintiffs their severance, bonuses, and stock benefits.

### The Employment and Phantom Stock Contracts

4.23 Sections 3 and 4 of Plaintiffs' employment and Phantom Stock contracts set forth the relevant terms of Plaintiffs' compensation. Pursuant to Sections 3 and 4 of the employment contract, Plaintiffs each received an annual salary of $120,000 per year, plus a one-time signing bonus of $15,000, annual bonuses, milestone bonuses, and 150,000 shares of Phantom Stock. Section 3 further memorialized Defendant X2's assurances, made at the time of execution, that Plaintiffs' would receive their salary and bonuses once Defendant X2 secured funding.

4.24 Throughout the duration of their employment, Plaintiffs achieved, amongst other milestones, the execution of pilot programs at Fort Benning, Fort Bragg, Fort Leonard Wood, Ford Rucker, Dam Neck, and other special operation bases, negotiation and development of consortium agreements, award of government grants and monies, and the award of sole source contracts and a cooperative research and development agreement from the government, all for Defendant X2.

4.25 Throughout the duration of their employment, Plaintiffs never received any annual or milestone bonuses.

4.26 Throughout the duration of their employment, Plaintiffs never received any distribution of Phantom Stock.

        4.27 Section 7 of Plaintiffs' employment contracts sets forth Defendant X2's severance policy. Pursuant to Section 7(b)(iii), in the event of a termination without just cause, Plaintiffs are entitled to severance compensation of two years' base salary and all vested Phantom Stock.

Dkt. #1 at ¶¶ 4.1-4.27 (bold in original).

Defendants filed their Answers to the Complaint on August 11, 2017, and on September 8, 2017. Dkts. #15, #16, #17 and #23. Discovery then proceeded. The instant motion followed.

### III.    DISCUSSION

#### A. Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The same legal standard applies to a motion for judgment on the pleadings as to a motion to dismiss for failure to state a claim. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). Thus, the Court must accept as true all material facts alleged in the pleadings and draw all reasonable inferences in favor of the nonmoving party. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). Though the Court limits its review to allegations of material fact set forth in the complaint, the Court may consider materials attached to or incorporated by reference in the pleadings. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Here, the Court considers Exhibits A-E attached to Plaintiffs' Complaint, which have been incorporated by reference therein. Dkt. #1, Exs. A-E. The Court does not consider the Declaration of Michael R. Gordon filed in support of the instant motion, which unnecessarily reiterates allegations made in the Complaint and attaches copies of

Defendants' Answers. Dkt. #56. The Court considers the pleadings themselves, which are already contained in the record.

**B. Plaintiffs' Complaint**

On this motion, Defendants seek the dismissal of both causes of action asserted by Plaintiffs. The Court addresses each Cause of Action, in turn, below.

*1. Breach of Contract*

Defendants first argue that Plaintiffs' Cause of Action One for breach of contract must be dismissed in its entirety because Plaintiffs were terminated for "just cause," which precludes them from recovering the damages they now seek in this action. Dkt. #55 at 7-8. Plaintiffs respond that financial inability to pay wages does not constitute "just cause" and therefore their claim must proceed. Dkt. #66 at 5-7.

As an initial matter, the Court examines the term "just cause" as used in the alleged employment contracts between Plaintiffs and Defendant X2. *See* Dkt. #1, Ex. B. Under Washington law, when interpreting a written contract, the intent of the contracting parties controls. *Dice v. City of Montesano*, 131 Wn.App. 675, 683-84, 128 P.3d 1253 (2006). Washington follows the "objective manifestation theory" of contract interpretation, under which determining the parties' intent begins with a focus on the reasonable meaning of the contract language. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Contracts are considered as a whole, interpreting particular language in the context of other contract provisions. *See Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 669-70, 15 P.3d 115 (2000). Words are generally given their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. *Hearst*, 154 Wn.2d at 504.

The contracts at issue in this matter do not define the term "just cause." *See* Dkt. #1, Ex. B. However, under the standard discussed above, Washington courts have defined "just cause" with its plain and ordinary meaning:

> "[J]ust cause" is a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power. We further hold a discharge for "just cause" is one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true.

*Baldwin v. Sisters of Providence in Washington, Inc.,* 112 Wn.2d 127, 139, 769 P.2d 298 (1989). Plaintiffs provide no valid reason as to why this Court should not use that definition. Accordingly, the Court now turns to Defendants' justification for Plaintiffs' termination.

Plaintiffs allege that they were terminated due to "lack of company funds," which they appear to assert is without just cause. Dkt. #1 at ¶ ¶ 4.15, 4.27 and Ex. E. They further allege that "Defendant X2 breached Plaintiffs' employment contracts by failing to provide Plaintiffs with severance compensation as set forth in Section 7(b)(iii)" and "by failing to provide Plaintiffs with annual bonuses, milestone bonuses, and stock benefits as set forth in Sections 3, 4, and 7 of the employment contracts." Dkt. #1 at ¶ ¶ 5.3 and 5.4. Pursuant to the contracts presented by Plaintiffs, Defendant X2 may terminate Plaintiffs for "just cause," in which case the Plaintiff would not be entitled to advance notice or compensation in lieu of advance notice, although they would be entitled to any base salary and bonuses earned, or "without just cause," in which case Plaintiffs would have been entitled to severance compensation in addition to earned salary and bonuses. Dkt. #1, Ex. B, *Contract* at ¶ 7(b). It is the severance compensation they seek now through Cause of Action One. Dkt. #1 at ¶ 5.3.

Having reviewed the pleadings in this case, the Court agrees with Defendants that Plaintiffs were terminated for just cause. *See* Dkt. #55 at 7-8. Plaintiffs do not plead that they

ORDER
PAGE - 7

were terminated for any arbitrary, capricious, or illegal reason. Instead, Plaintiffs plead that they were terminated due to the financial inability of X2 to pay them. Although Plaintiffs, argue that "just cause" focuses on employee actions, and refers to improper employee conduct, they do not cite any legal authority that supports their proposition. Dkt. #66 at 6-7. Thus, the Court is not persuaded by Plaintiffs' unsupported argument. Further, other courts have also held that terminations for economic reasons constitute termination for just cause. *See*, *e.g.*, *McMillan v. NAPCO Scientific Co.*, 1993 U.S. Dist. LEXIS 1415, at *9 (D. Or. 1993) (finding that "termination of employment which is motivated by economic circumstances is termination for just cause." (citation omitted)). *See also Gianaculas v. Trans World Airlines, Inc.*, 761 F.2d 1391, 1395 (9th Cir. 1985) ("[T]he evidence indicates that appellants were furloughed as part of a general reduction in TWA's management work force necessitated by the company's economic circumstances and resulting in the abolishment of their positions. In contrast to the situation in *Cleary*, appellants were not, therefore, dismissed without good cause.").

As noted above, in *Baldwin v. Sisters of Providence*, the Washington Supreme Court held that "just cause" for an employee termination means a "fair and honest cause or reason, regulated by good faith on the part of the party exercising the power." 112 Wn.2d at 139. The court did not limit that definition to employee misconduct or any other specific, factual event that might occur. Thus, this Court agrees with Defendants that if "just cause" is not defined in the contract, a party exercising the power (here, X2) acts in good faith when it decides to terminate its employees and that termination is deemed to be "for just cause" unless it was done for some "arbitrary, capricious, or illegal reason." *See* Dkt. #55 at 7-8. Plaintiffs do not contend X2 terminated them for any pretextual reason. To the contrary, Plaintiffs plead that they were terminated because Defendants determined they could no longer afford to keep Plaintiffs on the

ORDER
PAGE - 8

payroll. Accordingly, the Court finds as a matter of law that Plaintiffs cannot claim they were terminated without just cause, and their first cause of action as pled must be dismissed.

   2. *Willful Withholding of Wages*

In Cause of Action Two, Plaintiffs allege that Defendants wrongfully and willfully withheld Plaintiffs' wages in violation of RCW 49.52.050 by refusing to pay Plaintiffs their severance, bonuses and stock benefits. Dkt. #1 at ¶ 6.6. Because such compensation, in part, is triggered by a termination without just cause, and because the Court has found that Plaintiffs were terminated with just cause as a matter of law, this cause of action must also be dismissed because, as pled, it seeks compensation that is no longer available as a remedy. Accordingly, the Court dismisses Plaintiffs' Cause of Action Two.

**C. Leave to Amend**

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). Here, the Court has identified the deficiencies for which it has dismissed Plaintiffs' claims. However, given Plaintiffs' argument in response to the instant motion regarding other compensation sought, and the fact that Plaintiffs' may be able to allege a cause of action even if termination was for just cause, Plaintiffs shall have the opportunity to correct those deficiencies should they believe they can do so, through the filing of an Amended Complaint.

ORDER
PAGE - 9

### D. Pending Discovery Motions

Currently pending before the Court are Plaintiffs' second Motion to Compel and Defendants' Motion for Relief from Discovery Deadlines. Dkts. #47 and #51. Given the Court's rulings on the instant motion. The Court now DENIES both of these motions as MOOT.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS:

1) Defendants' Motion for Judgment on the Pleadings (Dkt. #55) is GRANTED with leave to amend.

2) Plaintiffs may file an Amended Complaint **no later than fourteen (14) days from the date of this Order**. Should Plaintiffs choose to file such a complaint, Plaintiffs shall omit all Causes of Action and/or factual allegations that have been dismissed as noted above.

3) Nothing in this Order precludes Defendants from moving to dismiss any Amended Complaint should they believe such action is warranted and legally supported.

4) Plaintiffs' Second Motion to Compel (Dkt. #47) is DENIED AS MOOT.

5) Defendants' Motion for Relief from Discovery Deadline (Dkt. #51) is DENIED AS MOOT.

DATED this 9th day of May 2018.

_____
RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE