UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLES LINDEN, and RONALD LANDER,<br><br>Plaintiffs,<br><br>v.<br><br>X2 BIOSYSTEMS, INC., JOHN WU, CHRISTOPHER SIEGE, and BRIAN FLAIM,<br><br>Defendants. | CASE NO. C17-966 RSM<br><br>ORDER GRANTING IN PART AND DEFERRING IN PART DEFENDANTS' MOTION FOR FEES, COSTS, AND DISBURSEMENTS |

## I. INTRODUCTION

This matter is before the Court on Defendants' Post-Final Judgment Rule 54 Motion for Fees, Costs, and Disbursements. Dkt. #121. Plaintiffs filed this action after their employment was terminated, asserting that they were entitled to certain payments and that those payments constituted withheld wages. Dkt. #108. The Court dismissed Plaintiffs' claims on Defendants' motion to dismiss. Dkt. #119. Defendants now seek attorneys' fees, costs, and disbursements incurred by Defendant X2 Biosystems, Inc. ("Defendant X2") in the amount of $545,642.48. Dkt. #121 at 1. Plaintiffs contest Defendant X2's entitlement to fees, costs, and disbursements in this action. Dkt. #129. The parties have not requested oral argument and the Court does not

ORDER – 1

find oral argument necessary to its resolution of this Motion. Having reviewed the record and for the reasons set forth below, the Court grants in part and defers in part Defendants' Motion.

## II. BACKGROUND

Plaintiffs are former employees of Defendant X2. At the time they were hired by Defendant X2, Plaintiffs each executed employment contracts, Inventions and Confidentiality Agreements, and Phantom Stock Agreements. Dkt. #108 at 28–60. Plaintiffs were subsequently terminated and initiated this action against Defendant X2 seeking severance, annual bonuses, milestone bonuses, and phantom stock benefits they believed they were owed under the employment agreements. *Id.* at ¶¶ 8.1–8.5. Plaintiffs also brought claims against Defendant X2 and the individual Defendants for unlawfully withholding wages under Washington law, asserting their severance, annual bonuses, milestone bonuses, and phantom stock benefits constituted "wages" under the terms of their employment agreements. *Id.* at ¶¶ 9.1–9.8.

Plaintiffs proceeded under three different complaints in this action and throughout, Plaintiffs have pursued claims for "phantom stock benefits" that they believed they were owed under their employment agreements with Defendant X2. Dkt. #1 at ¶¶ 5.1–5.4; Dkt. #71 at ¶¶ 6.1–6.5; Dkt. #108 at ¶¶ 8.1–8.5. Specifically, under the Phantom Stock Agreements, "a 'share' of Phantom Stock shall mean a contractual right to receive distributions in like amount as, and as and when distributions are made to an owner, as of the Effective Date of one share of the common stock of X2 (a "Common Share") by reason of ownership of such Common Share." Dkt. #108 at 41, 58. Defendants sought dismissal of Plaintiffs' final Second Amended Complaint, prevailed, and the Court ordered dismissal of Plaintiffs' claims. Dkts. #110 and #119. Regarding Plaintiffs' stock benefit claims, the Court specifically found that Plaintiffs failed to

ORDER – 2

plead a necessary condition precedent: that a distribution had been made to owners of common stock. Dkt. #119 at 7–8.

The Phantom Stock Agreements, between Plaintiffs and Defendant X2, included a provision awarding attorneys' fees and costs to a prevailing party. Specifically, the Agreements provided:

> If any Party hereto shall bring any suit, arbitration or action against another for relief, declaratory or otherwise, arising out of this Agreement, the prevailing Party shall have and recover against the other Party, in addition to all court costs and disbursements, such sum as the court or arbitrator may adjudge to be a reasonable attorneys' fee.

Dkt. #108 at 43, 60. On the basis of this provision and the outcome of this action, Defendant X2 now seeks fees and costs in defending this action. Dkt. #121.

### III. DISCUSSION

#### A. Legal Standard

Federal courts interpret and apply state law when enforcing contractual attorneys' fee provisions pursuant to Federal Rule of Civil Procedure 54(d). *MRO Communications, Inc. v. AT&T Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999). In turn, Washington courts generally "enforce attorney fee provisions in contracts 'if the action arose out of the contract and if the contract is central to the dispute.'" *LaCoursiere v. Camwest Dev., Inc.*, 181 Wash. 2d 734, 748, 339 P.3d 963, 970 (2014) (quoting *Seattle–First Nat'l Bank v. Wash. Ins. Guar. Ass'n,* 116 Wash.2d 398, 413, 804 P.2d 1263 (1991)). Conversely, "[w]hen the underlying documents merely provide the background out of which the [plaintiff] allegedly acquires new rights and duties by operation of law . . ., it is apparent that the action is not 'on the contract.'" *Hemenway v. Miller*, 116 Wn.2d 725, 742, 807 P.2d 863 (1991).

ORDER – 3

**B. Discussion**

In opposing Defendants' Motion, Plaintiffs seek to marginalize their stock benefit claims and the involvement of the Phantom Stock Agreements. Specifically, they argue that the Phantom Stock Agreements were not "central to the controversy" because Plaintiffs sought breach of contract remedies only under their employment contracts. Dkt. #129 at 3–5. The Court does not agree. Plaintiffs' breach of contract claims specifically alleged breach of contract due to a failure to pay "Phantom Stock benefits." Dkt. #108 at ¶¶ 8.3, 8.4. Plaintiffs were entitled to financial gain from ownership of phantom stock only under the Phantom Stock Agreements. *Id.* at 41, 58 (providing that a share of phantom stock is a "contractual right to receive distributions" when distributions are made to holders of common stock). Otherwise, Plaintiffs were not entitled to "stock benefits" under their employment contracts. This outcome is not altered because Plaintiffs further sought to establish that the unpaid stock benefits were "wages" under the employment contracts. Plaintiffs' wage claims at least minimally relied on a breach of the Phantom Stock Agreements.

For many of the same reasons, the Court also is not persuaded by Plaintiffs' argument that Defendant X2 cannot recover attorneys' fees under the Phantom Stock Agreements because Washington law only allows fee shifting provisions to operate in favor of employees. Dkt. #129 at 5–7. The Washington case law Plaintiffs rely on applies in statutory wage claim and analogous cases. *See Walters v. A.A.A. Waterproofing, Inc.*, 151 Wn.App. 316, 211 P.3d 454 (2009) (mandatory bilateral fee shifting provision in arbitration agreement unconscionable where employee sought wage claims that would otherwise be subject to Washington statute restricting fees to prevailing employees); *Brown v. MHN Gov't Servs., Inc.,* 178 Wn.2d 258, 274–75, 306 P.3d 948 (2013) (finding mandatory arbitration agreement unconscionable in part because the

ORDER – 4

bilateral fee shifting provision was unconscionable as Washington law precludes such a provision in wage claim); and *LaCoursiere*, 339 P.3d at 970 (in suit "exclusively under" Washington Wage Rebate Act to determine whether forced rebate of a portion of annual discretionary bonus violated law, court would not apply attorneys' fee provision in favor of employer). Plaintiffs' argument again ignores the fact that only Plaintiffs' Phantom Stock Agreements entitled them to financially benefit from their ownership of phantom stock. And, only if they were entitled to distributions under the Phantom Stock Agreements could Plaintiffs' establish that "stock benefit wages" had been withheld. The authorities Plaintiffs provide do not bar the enforcement of an attorneys' fee provision here.

However, the Court is also not persuaded by the extreme position taken by Defendants that the claims under the Phantom Stock Agreements were "complex" and inextricably intertwined with Plaintiffs' other claims. Dkt. #121 at 11–12. Defendants use this argument to assert entitlement to the entire amount spent defending this lawsuit without the need to segregate any portion of the fees, either as to claims or Defendants. *Id.* But the Court does not agree that all of Plaintiffs' claims were inextricably intertwined. Plaintiffs asserted breach of contract claims under the employment contracts and the Phantom Stock Agreements and asserted that the failure to pay sums under those agreements were violations of Washington wage laws. These issues are discrete and capable of being segregated.

The Court acknowledges that some confusion as to the interrelatedness of claims may have been created by the following paragraph of its Order Granting Dismissal:

> Because Plaintiffs have not adequately plead that their termination was "without just cause," their severance and Phantom Stock claims fail as a matter of law. Under the contracts, Plaintiffs were entitled to severance and Phantom Stock only if they were terminated "without just cause." Dkt. #108 at 30, 47 (Section 7). Accordingly, these claims are dismissed.

ORDER – 5

Dkt. #119 at 7.  Plaintiffs' Phantom Stock claims failed because they failed to plead that the condition precedent had occurred—that there had been a disbursement to owners of common stock.  The inartful reference to "Phantom Stock claims" was intended as a reference to the issue of whether shares of phantom stock had accelerated and vested under the employment contracts.[1] As any claim related to the phantom stock ultimately failed because of the failure to allege a distribution to owners of common stock, the Court was perhaps hasty with its explanation and apologizes for the confusion.

The Court has little issue concluding that Defendant X2 is entitled to some measure of attorneys' fees and costs under the Phantom Stock Agreements and therefore moves on to the more challenging question: What are reasonable attorneys' fees and costs for this narrow issue? Defendants blindly claim entitlement to the full amount of their fees ($471,820.06) and costs ($73,683.42) to defend all Defendants against all claims.  Dkts. #121 at 1 and #132 at 6 n.2.  But as Plaintiffs correctly note, Defendants may only seek defense costs and attorneys' fees related to successfully defending the breach of the Phantom Stock Agreements.  Dkt. #129 at 8–10. Likewise, Plaintiffs correctly note that Defendants can only recover fees and costs related to defending Defendant X2 on this issue because the individual Defendants were not subject to the claim arising from the Phantom Stock Agreements.  Dkt. #129 at 7–8 (pointing out that Washington law does not allow "a nonparty to a contract" to claim "attorneys' fees under that

---

[1] The Court does not believe that this matter was ultimately at issue as Plaintiffs had worked for Defendant X2 for more than thirty-six months and therefore there were no "unvested shares of Phantom Stock."  *See* Dkt. #108 at 30, 46 (upon termination without just cause, employee entitled to "any of your outstanding and unvested shares of Phantom Stock shall accelerate and the outstanding and unvested Phantom Stock shall be deemed to have fully vested at the time you are notified of the termination of your employment"); *Id.* at 41, 58 ("The remaining 75,000 shares shall vest over a period of thirty-six (36) months, commencing as of the November 1st, 2013, so that for every month of service to X2, whether as an employee, independent contractor, or otherwise, until such service is discontinued through a Termination, Recipient shall accrue one thirty-six (1/36) of the Phantom Stock granted hereunder.").

ORDER – 6

contract" and citing *G.W. Equip. Leasing, Inc. v. Mt. McKinley Fence Co., Inc.*, 97 Wash.App. 191, 200, 982 P.2d 114 (1999)). Plaintiffs point to a more reasonable sum—some portion of the $41,538.00 incurred on the final motion to dismiss—but provide no rational basis for fully calculating a reasonable award of fees and costs. Dkt. #129 at 10 n.17. The parties otherwise leave the Court without guidance.

Again, the Court has concluded that Defendant X2 is entitled to recover reasonable attorneys' fees and costs necessary for it to prevail on Plaintiffs' claims related to breach of the Phantom Stock Agreements.[2] This strikes the Court as a narrow issue that ultimately was determined by a single fact that was, at all times, known to Defendants.[3] The Court acknowledges the practical difficulties the parties face in briefing such a wide range of possible outcomes while attempting to protect their interests. But the parties must provide the Court with some reasonable guidance in a case such as this. Hopefully the Court's guidance to this point will allow the parties to focus on the issue reasonably in dispute. Accordingly, the Court defers its determination of reasonable attorneys' fees and costs and seeks further guidance from the parties.

## IV. CONCLUSION

Having reviewed Defendants' Motion, the relevant briefing, and the remainder of the record, the Court hereby finds and ORDERS:

---

[2] The Court views the inclusion of "phantom stock benefits" in the Plaintiffs' wage claims as trivial. To the extent Defendants incurred attorneys' fees and costs related to defense of Plaintiffs' wage claims, only a de minimis portion would have been related to breach of the Phantom Stock Agreements.

[3] Notably, very few of the complaints' allegations related to the phantom stock benefit claims. *See, e.g.*, Dkt. #108 (15 paragraphs out of 148 mentioning stock); Dkt. #132 at 3. There was also only limited briefing on the issue, with Defendants submitting not more than five pages of briefing on the issue. In contrast, on just the two dispositive motions the Court ruled on, Defendants submitted more than 60 pages of briefing. Dkts. #55, #69, #110, and #112.

ORDER – 7

1. Defendants' Post-Final Judgment Rule 54 Motion for Fees, Costs, and Disbursements (Dkt. #121) is GRANTED in part and DEFERRED in part as specified in this Order.
2. The Court DIRECTS the parties to meet and confer—in person or by telephone—within seven days of this Order to make a good faith effort to resolve the issue.
    a. If the parties resolve the dispute, they shall inform the Court within fourteen days of this Order whether any further action is needed from the Court.
    b. If the parties do not reach an agreement, the parties shall submit simultaneous briefs on the issue. The briefs, which shall not exceed five pages, shall be due within fourteen days of this Order. Any briefing should focus only on reasonable attorneys' fees and costs (and the methodology used) for the narrow issue identified in this Order. The parties shall not expand on the record beyond this briefing.
3. The Clerk shall renote Defendants' Post-Final Judgment Rule 54 Motion for Fees, Costs, and Disbursements (Dkt. #121) for the Court's consideration on May 3, 2019.

DATED this 18th day of April 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE