UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLES LINDEN, and RONALD LANDER,

Plaintiffs,

v.

X2 BIOSYSTEMS, INC., JOHN WU, CHRISTOPHER SIEGE, and BRIAN FLAIM,

Defendants.

CASE NO. C17-966 RSM

SUPPLEMENTAL ORDER GRANTING IN PART DEFENDANTS' MOTION FOR FEES, COSTS, AND DISBURSEMENTS

This matter is before the Court following supplemental briefing on Defendant's Post-Final Judgment Rule 54 Motion for Fees, Costs, and Disbursements. Dkts. #121, #137, and #138. Plaintiffs initiated this action against Defendant X2 Biosystems, Inc. ("Defendant X2") seeking severance, annual bonuses, milestone bonuses, and phantom stock benefits they asserted they were entitled to under their employment contracts.[1] Dkt. #1 and #108. Plaintiffs' entitlement to phantom stock benefits was governed by Phantom Stock Agreements that contained an attorneys' fee provision. After the Court dismissed Plaintiffs' claims, Defendant X2 requested attorneys'

---

[1] Plaintiffs also asserted wrongful withholding of wage claims against Defendant X2 and the individual Defendants premised on their entitlement to payments and stock benefits under their employment contracts.

ORDER – 1

fees and the Court determined "that Defendant X2 is entitled to recover reasonable attorneys' fees and costs necessary for it to prevail on Plaintiffs' claims related to breach of the Phantom Stock Agreements." Dkt. #136 at 7. However, neither party provided the Court with a reasonable methodology for segregating the work defending the phantom stock claims from the work defending the other claims or for segregating the work performed for Defendant X2 and the work performed for the individual Defendants. The Court requested supplemental briefing from the parties to aid it in determining a reasonable fee. *Id.* at 7–8. Having considered the parties' supplemental briefing (Dkts. #137 and #138), the Court resolves the remaining issues as follows.

**A. Reasonable Fee**

District courts have broad discretion to determine the reasonableness of fees. *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). Attorneys' fee awards are determined by calculating a "lodestar figure," the number of hours reasonable expended at a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This figure is presumptively reasonable, but the court can adjust the lodestar figure by the *Kerr*[2] factors in appropriate cases. *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006); *Pham v. City of Seattle*, 159 Wash.2d 527, 151 P.3d 976 (2007) (equivalent process under state law).

//

//

---

[2] The "*Kerr* factors" refer to various considerations identified by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975). These factors include (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill required, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the relationship with the client, and (12) awards in similar cases. *Id.* at 70. Many of these factors are subsumed into the lodestar calculation itself. *Cunningham v. Cnty. of Los Angeles*, 879 F2d 481, 487 (9th Cir. 1988).

ORDER – 2

The primary issue for the Court is the reasonable number of hours expended in defending Defendant X2 on the phantom stock claims.[3] Defendants have submitted extensive time records and, in their supplemental briefing, indicate that they "made a good faith effort to limit [] calculations to work performed and fees incurred by [Defendant X2] only." Dkt. #137 at 2. Defendants have also attempted to segregate fees as related to discrete tasks. *Id.* at 2–3. Plaintiffs argue for across-the-board cuts and the Court therefore generally accepts Defendants' base calculations, as follows:

| Area of work | Total Fee |
|---|---|
| Answer[1] | $8,443.00 |
| Successful Opposition to Plaintiffs' First Motion to Compel[2] | 7,974.00 |
| Successful Motion to Dismiss Complaint[3] | 28,017.00 |
| Successful Opposition to Plaintiffs' Second Motion to Compel[4] | 9,551.00 |
| Successful Motion to Dismiss Second Amended Complaint[5] | 49,930.00 |
| Successful Opposition to Motion to Extend Scheduling Deadlines[6] | 13,916.00 |
| Discovery and Deposition Preparation and Representation[7] | 65,948.00 |
| TOTAL | $183,779.00 |

---

[3] Other than noting several minor miscalculations, Plaintiffs do not appear to seriously contest the hourly rates claimed.

ORDER – 3

Plaintiffs argue that the Court should only consider awarding fees related to the second successful motion to dismiss because that was the only work that led to Defendant X2 ultimately prevailing. Plaintiffs grasp onto a prior statement by the Court: "Plaintiffs point to a more reasonable sum—some portion of the $41,538 incurred on the final motion to dismiss—but provide no rational basis for fully calculating a reasonable award of fees and costs." Dkt. #136 at 7. But Plaintiffs read too much into the statement. The Court merely mused that some sum less than $41,538.00 appeared to be a more reasonable award than the $471,959.06 requested by Defendants. The Court does not conclude that "a reasonable attorneys' fee" for Defendant X2 is strictly limited to work on the final successful motion to dismiss.

However, the Court also does not believe that all categories of work laid out by Defendants were necessary or reasonable to prevail on the phantom stock claims. Specifically, Defendants seek fees for defending two motions to compel and one motion to modify the Court's scheduling order. Dkt. #137 at 2–3. Defendants do not establish that these motions were reasonable or necessary to prevailing on the phantom stock claims and the Court accordingly does not award fees related to those motions.

Plaintiff argues that Defendants' claimed fees should be reduced by 40% because the time entries related to the motion to dismiss are vague and represent excessive, duplicative, and unnecessary work. Dkt. #138 at 3–4. Plaintiffs argue the entries are overly vague because they reference "research and writing," "work on motion to dismiss SAC," "draft/review," and "analysis/strategy." *Id.* at 3. Plaintiffs also argue that the billing is excessive, pointing out that Defendants billed many more hours on their second motion to dismiss despite extensive overlap with the issues briefed on the first motion to dismiss. *Id.* at 3–4. (citing Dkt. #123 at 120–23).

ORDER – 4

Lastly, Plaintiffs argue that the billing records related to the motion to dismiss include duplicative and clerical work. *Id.* at 4.

The Court does not agree that Plaintiffs' drastic reduction is appropriate but does share some of the same concerns. Many entries are vague or represent block billing, frustrating the Court's review and inflating time.[4] *See e.g.* Dkt. #123 at 63 (11/16/17 entry); 109 (2/13/18 entry); 121 (5/22/18 entry). Further, there likely was duplication of effort due to multiple attorneys working on issues simultaneously and because Defendants elected to switch counsel during the pendency of this action.[5] *See e.g., Id.* at 152–53 (indicating Mr. Gordon spent 11.1 hours to "Draft/revise reply on motion to dismiss" on the same day that Mr. Schecter spent 2.6 hours to "Review, comment and revise initial draft of Defendants' Reply re Motion to Dismiss").[6] Within the Ninth Circuit, a 10% haircut of hours without a specific explanation is not error and the Court may apply a larger cut with "weightier and more specific" justifications. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112–13 (9th Cir. 2008). Due to the recognized issues above, the Court finds that a 15% reduction in the hours claimed is appropriate here.

Next, the Court considers what proportion of the total work performed is reasonably attributed to defense of the phantom stock claims. Defendants argue the proper proportion is 25% of the total work. Dkt. #137 at 2. Adopting the Court's observation that only five pages out of more than 60 pages of Defendants' briefing on the motions to dismiss related to the

---

[4] Block billing is recording several discrete tasks under a single time entry. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (noting California State Bar study finding block billing "may increase time by 10% to 30%").

[5] *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (court is to exclude those hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary.").

[6] The Court does not imply that the act of having a second attorney review a motion is excessive or redundant, only that the total time involved on this date makes it highly likely that some review and revision work was done simultaneously, likely resulting in duplication of effort.

ORDER – 5

phantom stock claims, Plaintiffs propose 8.33% as a reasonable estimate. Dkt. #138 at 5. The Court also previously noted that only 15 paragraphs of Plaintiffs' 148-paragraph complaint even mentioned stocks–10.14%. Dkt. #136 at 7 n.3. The Court now notes that only two of the twenty requests for production served on Defendant X2 dealt with stocks—10%. Dkt. #130 at ¶ 22; Dkt. #29-1 at 2–12. Accordingly, with the exception below, the Court finds that 10% is a reasonable estimate of the proportion of work related to defending Plaintiffs' phantom stock claims.

Defendants have claimed extensive attorneys' fees related to discovery—$65,948. Defendants do not, however, establish that even 10%, much less 25%, was reasonably related to the phantom stock claims. As the Court previously noted, the phantom stock claims were "a narrow issue that ultimately was determined by a single fact that was, at all times, known to Defendants"—that no stock distributions were ever made. Dkt. #136 at 7. Because discovery was not ultimately necessary for Defendants to prevail on the phantom stock claims and because any discovery work attributable to the phantom stock issue was likely de minimis, the Court finds that only 1% of these fees is reasonably attributed to the phantom stock claims.

| Area of Work | Defendants' Base Calculation | Less 15% Reduction in Hours | Proportion Attributed to Phantom Stock Claims | Sub-Total |
|---|---|---|---|---|
| Answer | $8,443.00 | $7,176.55 | 10% | $717.66 |
| Successful Motion to Dismiss Complaint | $28,017.00 | $23,814.45 | 10% | $2,381.45 |
| Successful Motion to Dismiss Second Amended Complaint | $49,930.00 | $42,440.50 | 10% | $4,244.05 |
| Discovery and Deposition Preparation and Representation | $65,948.00 | $56,055.80 | 1% | $560.56 |
| | | | Total | $7,903.71 |

ORDER – 6

**B. Costs**

Defendant X2 is also entitled to all reasonable court costs and disbursements related to the phantom stock claims. Defendants seek recovery for travel expenses related to Plaintiffs' depositions, transcription services, and disbursements to a discovery vendor. Dkt. #137 at 3. Defendants claim total expenditures on these items of $67,614.16 and allocate 25% of that to the phantom stock claims—$16,903.53. *Id.* Plaintiffs contend that the expenses associated with the discovery vendor were, in effect, voluntary and excessive and that Defendants have not carried their burden of proof. Dkt. #129 at 12. As the Court noted, discovery attributable to the phantom stock claims was de minimis and the Court similarly allocates 1% of these expenses as reasonably related to the phantom stock claims. Accordingly, the Court awards costs of $676.14.

Having reviewed Defendants' Motion, the relevant briefing, and the supporting documents, the supplemental briefing, and the remainder of the record, the Court finds and ORDERS:

1. Defendants' Post-Final Judgment Rule 54 Motion for Fees, Costs, and Disbursements (Dkt. #121) is GRANTED in part and DENIED in part for the reasons specified above and the reasons specified in the Court's earlier Order Granting in Part and Deferring in Part Defendants' Motion for Fees, Costs, and Disbursements (Dkt. #136).

2. The Court AWARDS Defendant X2 Biosystems, Inc. a total of $8,579.85 (attorneys' fees of $7,903.71 and costs and disbursements of $676.14).

DATED this 13th day of June 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 7